UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

03 CV 12203 RGS

FEDERAL INSURANCE COMPANY )
15 Mountain View Road )
Warren, New Jersey 07059, )
    MAGISTRATE JUDGE Dein

    Plaintiff, )
) Civil Action No. _____
v. )
)
HAVERHILL GOLF & COUNTRY CLUB, INC. )
Brickett Lane )
Haverhill, MA 01831, )
)
    Defendant. )
)

AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. P.O.M
DATE 11-10-03

## COMPLAINT

Plaintiff Federal Insurance Company ("Federal") for its Complaint against Defendant Haverhill Golf & Country Club ("Haverhill"), alleges as follows:

### INTRODUCTION

1. This is an action by Federal for a declaratory judgment determining the parties' respective rights, duties, and obligations under Executive Risk Policy for Country Clubs No. 81224995-E issued to Haverhill, for the Policy Period March 26, 1995 through March 26, 1996 (the "Policy").

2. Haverhill was sued for discrimination by a number of its female members and by the Massachusetts Attorney General. Haverhill tendered these lawsuits to Federal under the Policy, and Federal reimbursed Haverhill's defense costs under a reservation of rights.

3. Throughout the course of the litigation, Federal urged Haverhill to negotiate a settlement with plaintiffs, and agreed to fund settlement offers to the plaintiffs. However, Haverhill's insistence that plaintiffs publicly acknowledge that they were not discriminated against, as a condition of any settlement, and its refusal to accept various non-monetary demands

291796 v1

made by plaintiffs, made it impossible to negotiate a settlement. As a result, the case was tried and resulted in a $1,967,400 jury verdict against Haverhill.

4.      Throughout the appellate process, Federal supported further efforts to settle the case, and proffered the remaining limits of the Policy to Haverhill for Haverhill's use in the ongoing defense and/or settlement of the litigation. However, plaintiffs' and defendant's continued insistence on non-monetary terms unacceptable to the other, and the refusal of Haverhill's excess insurer, U.S. Fire Insurance Company ("U.S. Fire"), to timely proffer the limits of its excess policy, made a global settlement of the case impossible. Federal has nearly exhausted the remainder of its Policy on the appeal and in connection with settlements with some, but not all, of the plaintiffs.

5.      Ultimately, plaintiffs' verdict was affirmed on appeal, in an amount in excess of Haverhill's excess insurance policy. Haverhill claimed that its excess insurer acted in bad faith in failing to effectuate a settlement of the litigation within the limits of the excess policy and the excess insurer settled Haverhill's bad faith claim by paying Haverhill an amount substantially in excess of its $2 million policy limits.

6.      Haverhill has now demanded that Federal pay amounts above and beyond the limit of its Policy and has threatened to file suit against Federal alleging that Federal also acted in bad faith in connection with the lawsuits. Federal has refused Haverhill's demand, and seeks a declaration from this Court that it has complied with its obligations under the Policy and is not liable for any further payments to Haverhill.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. §§ 2201 and 2202. There is complete diversity between the parties, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). Haverhill is located in this District, and a substantial part of the events or omissions giving rise to the claims at issue here occurred in this District.

## PARTIES

9.  Plaintiff Federal is a corporation organized and existing pursuant to the laws of the State of Indiana with its principal place of business in the State of New Jersey.

10. Upon information and belief, Defendant Haverhill is a non-profit corporation organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business in the Commonwealth of Massachusetts.

## FACTS

### The Underlying Actions

11. On or around August 9, 1995, Sally Brochetti, Judith Borne, Marlene MacKinnon, Cindy Johnston, Karen Richardson, Maria Torrisi, Diana Cordner, Pamela Corcoran, Rose White, Linda Letendre, Pamela Dean, Lorna Kimball and Ileane Greenstein, all of whom at the time were female members of Haverhill, filed a complaint against Haverhill with the Massachusetts Commission Against Discrimination ("MCAD Charge").

12. The MCAD Charge alleged that Haverhill discriminated against women based on their gender with respect to: their ability to become Primary Members at Haverhill; certain privileges, such as voting and committee membership; their access to tee times; and the access men and women had to various rooms and locations at Haverhill. The MCAD Charge also alleged that Haverhill, through its male members, Board of Governors and its committees, retaliated against the complainants for bringing the MCAD Charge.

13. On or around March 25, 1996, the Massachusetts Attorney General intervened as a plaintiff in the MCAD Charge.

14.     On November 2, 1996, the Massachusetts Attorney General filed a lawsuit against Haverhill captioned <u>Commonwealth of Massachusetts v. Haverhill</u>, Case No. 96-6511 (Sup. Ct. of Suffolk County) (the "Commonwealth Action").

15.     The Commonwealth Action alleged that Haverhill violated: Mass. Gen. Laws ch. 272 § 98, by making a distinction, discrimination or restriction on account of sex; Mass. Gen. Law ch. 151B, by interfering with another person in the exercise of a right protected by that chapter; and Mass. Gen. Law ch. 93A § 2, by committing unfair and deceptive acts or practices in connection with membership at Haverhill.

16.     On or around November 25, 1996, Judith Borne, Sally Brochetti, Diana Cordner, Pamela Dean, Cindy Johnston, Lorna Kimball, Linda Letendre, Karen Richardson, Maria Torrisi and Rose White filed a lawsuit against Haverhill captioned <u>Borne, et al. v. Haverhill</u>, Case No. 96-2433-D (Sup. Ct. of Essex County) (the "Borne Action"). The plaintiffs in the Borne Action filed an amended complaint on December 19, 1996.

17.     The amended complaint in the Borne Action was filed as a class action on behalf of all female members of Haverhill, and it alleged, among other things, that Haverhill intentionally discriminated against women on the basis of gender in violation of Mass. Gen. Law ch. 151B; that Haverhill breached its contracts with its female members; that Haverhill's conduct was a breach of the implied covenant of good faith and fair dealing; and that Haverhill violated Mass. Gen. Law ch. 93A by willful and/or knowing unfair or deceptive acts or practices.

18.     In December 1996, the Commonwealth Action and the Borne Action were consolidated as <u>Commonwealth of Massachusetts, et al. v. Haverhill</u>, Case No. 96-6511 (Sup. Ct. of Suffolk County) (the "Consolidated Action").

19.     Haverhill tendered each of the foregoing matters to Federal and its excess insurer pursuant to the terms of its insurance policies.

## The Federal Policy

20. As referenced in Paragraph 1 above, the Policy is Executive Risk Policy for Country Clubs No. 81224995-E issued to Haverhill for the policy period March 26, 1995 through March 26, 1996. A copy of the Policy is attached hereto as Exhibit 1.

21. The Country Club Liability Coverage, Section 2 of the Policy, provides coverage, subject to the Policy's other terms and conditions, for "**Loss** which such **Insured** shall become legally obligated to pay on account of any claim against him during or after the **Policy Period** for a **Wrongful Act**." Policy § 2.1.

22. The Policy's limit of liability is $1 million each **Loss** and in the aggregate for each Policy Year. Policy, Declarations §2, Item 3 (A) & (B). Defense costs are included within the $1 million limit of liability as set forth in the Policy: "[t]he total limit of the Company's liability to pay any **Loss** hereunder, whether covered under Insuring Clause 2.1, 2.2 or 2.3 or any combination of them, shall not exceed the amount(s) set forth in Item 3 of the Declarations." Policy § 2.11.

23. Pursuant to the Policy, "all **Loss** arising out of all interrelated **Wrongful Acts** of the **Insured** shall be deemed one **Loss**, and such **Loss** shall be deemed to have originated in the earliest **Policy Year** in which any of such **Wrongful Acts** is first reported to the Company." Policy § 2.11.

24. A **Wrongful Act** is considered to be first reported to Federal "at the time any **Insured** first gives written notice to the Company that a claim has been made against the **Insured** for such **Wrongful Act**." Policy § 2.10(A).

25. The Policy's General Terms and Conditions provide that Federal:

may make any investigation it deems necessary and may, with the written consent of the **Insured**, make any settlement of a claim it deems expedient. Unless the Company elects otherwise, the Company's liability should the **Insured** withhold consent to such settlement shall not exceed the amount for which the Company

291796 v1                                    5

could have settled such claim plus costs, charges and expenses accrued as of the date such settlement was proposed in writing by the Company to the **Insured**.

Policy § 1.6.

26. "**Loss**" is defined in the Policy as: "the total amount which the **Insured** becomes legally obligated to pay on account of all claims made against it for **Wrongful Acts** with respect to which coverage hereunder applies, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs**. **Loss** does not include fines or penalties imposed by law or matters uninsurable under the law pursuant to which this policy is construed." Policy § 2.13.

27. "**Wrongful Act**" means:

> any error, misstatement or misleading statement, act or omission, or neglect or breach of duty committed, attempted or allegedly committed or attempted by any **Insured** individually or otherwise, in the discharge of his duties to the Country Club, or any matter claimed against him solely by reason of his serving in such capacity. All such causally connected errors, statements, acts, omissions, neglects or breaches of duty or other such matters committed or attempted by, allegedly committed or attempted by or claimed against one or more of the **Insureds** shall be deemed interrelated **Wrongful Acts**.

Policy § 2.13.

28. The Policy's Exclusions section provides, in relevant part, that Federal shall not be liable under the Policy for Loss in connection with any claims against Haverhill:

> (G)   brought about or contributed to by the dishonesty of such **Insured** if a judgment or other final adjudication adverse to such **Insured** establishes that acts of active and deliberate dishonesty were committed or attempted by such **Insured** with actual dishonest purpose and intent and were material to the cause of action so adjudicated;

   \*   \*   \*

> (M)   arising from an actual or alleged breach of a written contractual obligation of the **Insured** and which are made by a party to or third party beneficiary of the contract or agreement which gives rise to such obligation. Provided however, this exclusion does not apply to **Defense Costs** nor to any claim based upon a breach, or alleged breach, of an implied or actual contract of employment brought by an employee of the Country Club named in Item 1 of the Declarations.

Policy § 2.7, and Endorsement No. 2.

## The Handling of the Underlying Actions

29. Federal accepted Haverhill's tender of the foregoing actions and agreed to provide Haverhill with a defense, subject to a reservation of Federal's rights to deny coverage for the claim as appropriate.

30. Federal's Policy gives it the right and duty to defend any suit to which the Policy may apply, and pursuant to this right and duty, Federal appointed defense counsel to represent Haverhill in the various actions alleging discrimination. Haverhill, however, insisted that counsel of its own choosing handle the defense of these actions, at Federal's expense. Although it was not obligated to do so, Federal agreed to permit Haverhill to retain its own lawyers, and agreed to reimburse Haverhill, and did reimburse Haverhill, for said counsel at the rates at which its own lawyers were ready, willing and able to represent Haverhill.

31. Throughout the course of the Consolidated Action, Federal encouraged Haverhill to negotiate a settlement with plaintiffs therein, and offered to fund the monetary portion of any settlement in certain specified amounts. Haverhill insisted, however, that as a condition of any settlement, plaintiffs would have to admit and acknowledge that Haverhill did not engage in acts of discrimination against its women members. Plaintiffs repeatedly informed Haverhill that they would not agree to any such provision, and that they would refuse to settle the Consolidated Action if Haverhill continued to insist on such a provision as a condition of settlement.

32. On numerous occasions Federal advised Haverhill that Haverhill's insistence on an admission by plaintiffs that they had not been discriminated against was unreasonable, and that Haverhill's position precluded the possibility of settlement. Federal requested that Haverhill drop its demand, but Haverhill refused to do so, and continued to insist that plaintiffs publicly acknowledge that Haverhill had not discriminated against its women members.

33. Plaintiffs not only rejected Haverhill's demand, but also countered with their own non-monetary demands that Haverhill rejected as unacceptable. Plaintiffs demanded, among other things, that as a condition of any settlement Haverhill acknowledge that it had discriminated against women in the past, and also that it make substantial changes to Haverhill's bylaws, governance and membership requirements.

34. Shortly before trial of the Consolidated Action, plaintiffs suggested that the parties engage in mediation in an effort to negotiate a settlement. Federal was desirous of proceeding with mediation, and requested that Haverhill inform plaintiffs that Haverhill was willing to mediate. Haverhill informed plaintiffs, over Federal's objection, that Haverhill would participate in a mediation if and only if plaintiffs agreed, in advance, that they would admit, as part of any settlement, that they had not been victims of discrimination by Haverhill. Plaintiffs rejected this condition, and as a result of Haverhill's insistence upon it, refused to participate in mediation prior to trial. As a result, the claims asserted against Haverhill in the Consolidated Action were tried to a jury.

35. On October 13, 1999, Federal informed Haverhill's counsel that if it would not consent to settlement for $300,000, that Federal would invoke Policy Section 1.6 and cap its damages at $300,000. Haverhill refused to consent to settlement based on its non-monetary demands.

### The Trial Verdict, Appeal and Settlement

36. After pre-trial motions and a trial beginning on September 27, 1999, the following claims from the Consolidated Action were submitted to a jury: gender discrimination in violation of Gen. Law ch. 151B, with a request for punitive damages; breach of the covenant of good faith and fair dealing; and violation of Gen. Law ch. 272 § 98.

37. The jury was instructed that in order to find discrimination, each plaintiff had to establish that Haverhill made a distinction, discrimination or a restriction regarding her access to or treatment by Haverhill based on her gender. If a plaintiff carried her burden, the jury was instructed that it had to determine if Haverhill had articulated a legitimate non-discriminatory reason for its actions. If Haverhill satisfied its burden, then to establish discrimination each plaintiff had to persuade the jury that Haverhill's proffered reasons for its actions were not the real reasons but a pretext for discrimination.

38. In order to find that Haverhill's reasons were pretext, the jury had to find that one of Haverhill's motives or intentions for what it did was to discriminate.

39. The jury was instructed that it could award punitive damages if it found that Haverhill had intentionally discriminated against plaintiffs. The court instructed that punitive damages could be awarded for malicious, wanton or oppressive conduct committed in reckless disregard of a plaintiff's rights or in callous indifference to a plaintiff.

40. The jury was instructed that if it found that Haverhill had exercised its discretion under the plaintiffs' membership contracts in bad faith so as to deprive the plaintiffs of privileges and benefits of the membership contract, it could award damages for breach of the implied covenant of good faith and fair dealing.

41. On October 27, 1999, the jury returned a verdict for the plaintiffs in the following amounts: $424,000 for discrimination, $113,400 for violations of good faith and fair dealing, and $1.43 million in punitive damages.

42. In its responses to Special Questions for the Jury, the jury determined that Haverhill had made a distinction, discrimination or restriction based on gender with respect to each individual plaintiff, and that with respect to three individual plaintiffs and the

Commonwealth on behalf of all women in Haverhill, that Haverhill's reasons it gave for the discrimination were pretext.

43. Haverhill filed various post-trial motions and, ultimately, an appeal from the verdict and judgment entered by the trial court.

44. After entry of the judgment by the trial court, Federal unconditionally proffered to Haverhill all remaining proceeds under the Policy, for use by Haverhill either to negotiate a settlement of the lawsuit or to prosecute an appeal from the trial court judgment.

45. Federal continued to assist Haverhill in its efforts to resolve this matter. At Haverhill's request, Federal attended a post-trial mediation to again explore the possibility of settlement. Federal also communicated with Haverhill's coverage counsel and Haverhill's excess insurer in an effort to encourage the excess insurer to promptly tender its policy limits toward a settlement.

46. After plaintiffs obtained their $1,967,400 verdict against Haverhill in the Consolidated Action, they were unwilling to settle their claims for the amount remaining under Federal's Policy. Plaintiffs were willing, however, to settle their claims for an amount within the $2 million limit of Haverhill's excess insurance policy. As Haverhill's counsel noted, "when the mediation was held there was sufficient coverage to satisfy the outstanding judgment, including interest." Nevertheless, despite repeated requests by Haverhill that its excess insurer tender its policy limits to settle the case on appeal (most of which were simply ignored by the excess insurer), Haverhill's excess insurer refused to do so until the amount of the judgment, plus interest, exceeded the limits of Haverhill's excess policy.

47. Plaintiffs' verdict and judgment was affirmed on appeal. Only after Haverhill was left with no further means to challenge the judgment did Haverhill's excess insurer agree to pay its policy limits toward satisfaction of the judgment obtained by plaintiffs. As previously

noted, at this point the insurance coverage provided by the excess policy was insufficient to pay the full amount of the judgment, plus interest.

48. On information and belief, under threat of a bad faith claim by Haverhill, Haverhill's excess insurer paid its entire $2 million toward plaintiffs' judgment, plus more than $400,000 in excess of its policy limits. Haverhill's excess insurer paid these extra-contractual damages in exchange for a release by Haverhill of Haverhill's claims against it for bad faith, unfair claims practices and fraud, and for compensatory, statutory and punitive damages.

49. On information and belief, plaintiffs' judgment has now been paid in full, utilizing funds from Federal, Haverhill's excess insurer, and Haverhill itself.

50. Haverhill has threatened to file suit against Federal unless Federal reimburses Haverhill for some portion of the settlement paid by Haverhill, and has demanded that Federal pay more than $400,000 in excess of its previously-proffered Policy limits. There is no basis whatsoever for Haverhill's demand, and Federal seeks a declaratory judgment from the Court that it has satisfied its obligations under the Policy and is not liable for any additional amounts.

## COUNT I

51. Federal repeats and incorporates by reference the allegations in paragraphs 1 through 50 of this Complaint.

52. The aggregate Limit of Liability under Federal's Policy is $1 million. Federal has paid the full $1 million aggregate limit of liability in the defense, and partial settlement, of the Consolidated Action.

53. Federal acted at all times reasonably and in good faith in the handling of the claims against Haverhill, and did not commit any unfair or deceptive acts or practices, thus, it cannot be held liable for any amounts above or beyond the Policy's one million dollar aggregate limit of liability.

54. The Policy does not provide coverage for the compensatory and punitive damages awarded for discrimination in the Consolidated Action because they were brought about or contributed to by the dishonesty of the Insured, as established by the final adjudication that Haverhill's reasons for its actions were pretext for discrimination and that at least one of Haverhill's motives or intents for what it did was to discriminate, thus, coverage is barred by Exclusion G.

55. The Policy does not provide coverage for the compensatory and punitive damages awarded for discrimination in the Consolidated Action because the jury found that Haverhill's actions constituted intentional wrongdoing, which is uninsurable under Massachusetts law, thus, such damages do not constitute "Loss" covered under the Policy.

56. The Policy does not provide coverage for the punitive damages awarded in the Consolidated Action because they are uninsurable under Massachusetts law and they constitute a fine or penalty imposed by law, thus, such damages do not constitute "Loss" covered under the Policy.

57. The Policy does not provide coverage for the damages awarded for breach of the covenant of good faith and fair dealing in the Consolidated Action because they arise from the breach of a contractual obligation, thus, coverage is barred by Exclusion M.

58. Because Haverhill refused to consent to Federal settling the Consolidated Action for $300,000, Federal cannot be held liable for any Loss in connection with the Consolidated Action beyond $300,000 plus costs, charges and expenses accrued as of October 13, 1999, pursuant to Policy Section 1.6.

59. For the reasons set forth above, Federal is entitled to a declaratory judgment that, to the extent there is any coverage under the Policy for the damages awarded in the Consolidated

Action, Federal is not liable for any such damages above and beyond its one million dollar Policy limit.

**WHEREFORE,** Federal prays that the Court enter judgment declaring that Federal has no liability for the damages awarded in the Consolidated Action beyond its Policy limits of one million dollars; awarding Federal of all of its costs and expenses incurred in this matter, including reasonable attorneys' fees; and providing such other and further relief as the Court deems just, necessary and proper.

Respectfully submitted,

MELICK, PORTER & SHEA, L.L.P.

Dated: November 7, 2003

By: _____
Robert P. Powers (BBO No. 544691)
28 State Street
Boston, MA 02109
(617) 523-6200 (phone)
(617) 523-8130 (fax)

**OF COUNSEL:**

ROSS, DIXON & BELL, L.L.P.
Wallace A. Christensen
Heather E. McIntyre
2001 K Street, N.W.
Washington, D.C. 20006-1040
Phone: (202) 662-2000
Fax: (202) 662-2190

Attorneys for Defendant
Federal Insurance Company

I hereby certify that I have made service of the foregoing document in accordance with the provisions of Fed. R. Civ. P 5.