UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL INSURANCE COMPANY<br>15 Mountain View Road<br>Warren, New Jersey 07059,<br><br>    Plaintiff,<br><br>v.<br><br>HAVERHILL GOLF & COUNTRY CLUB, INC.<br>Brickett Lane<br>Haverhill, MA 01831,<br><br>    Defendant. | Civil Action<br>No. 03-12203 RGS |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF/COUNTERCLAIM DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION TO DISMISS HAVERHILL GOLF &
COUNTRY CLUB, INC.'S COUNTERCLAIMS FOR BREACH OF THE
DUTY OF GOOD FAITH AND FAIR DEALING, FOR BAD FAITH, AND FOR
<u>PUNITIVE DAMAGES</u>**

<u>INTRODUCTION</u>

This is a declaratory judgment action by plaintiff/counterdefendant Federal Insurance Company ("Federal") seeking a ruling that Federal has complied with its obligations under an insurance policy issued to defendant/counterplaintiff Haverhill Golf & Country Club, Inc. ("Haverhill" or the "Club"), and that it is not liable to Haverhill for any damages above and beyond its $1 million policy limit. Haverhill has filed counterclaims for breach of contract, violation of G.L. c. 93A, "bad faith," breach of the duty of good faith and fair dealing, and for punitive damages. By this motion, Federal seeks dismissal of the latter three counterclaims. The counterclaim for punitive damages must be dismissed because Massachusetts law does not provide for punitive

296472v2

damages in lawsuits against insurance companies; instead, G.L. c. 93A limits claimants only to awards of multiple damages, in certain limited circumstances. Likewise, the "bad faith/good faith" counterclaims (which are essentially identical) are subsumed in the 93A counterclaim, and do not state independent claims for relief. Accordingly, for the reasons set forth more fully herein, Federal respectfully requests that the Court dismiss, with prejudice, Haverhill's "Counterclaim for Bad Faith Refusal to Settle," "Counterclaim for Breach of the Duty of Good Faith and Fair Dealing," and "Counterclaim for Punitive Damages."

## BACKGROUND

This insurance coverage lawsuit arises out of a gender discrimination lawsuit (the "Borne Action") successfully prosecuted by nine female members of Haverhill. The jury returned a $1.9 million verdict against the Club, including a punitive damages award. The Court of Appeals affirmed this verdict, citing evidence that women members had been: unfairly denied access to the golf course; barred from certain dining facilities; victimized by manipulative changes in membership rules; and subjected to unequal enforcement of Club regulations.[1]

The Club had a $1 million primary insurance policy issued by Federal, and a $2 million excess insurance policy issued by non-party U.S. Fire Insurance Company ("U.S. Fire").

---

[1] One noteworthy example cited by the Court of Appeals was the three-week suspension of a female tournament golfer for permitting a tournament to proceed with 68 entries rather than 72, while a male member of the Club's Board of Governors was not disciplined at all for "skinny dipping" in the Club pool with two waitresses.

Federal retained counsel to defend the Club in the Borne Action, but the Club rejected the defense and insisted on retaining its own lawyers. Federal thereafter reimbursed the Club for its legal fees and expenses at an agreed-upon rate.

Federal repeatedly urged Haverhill to negotiate a settlement of the Borne Action, and offered to fund the monetary portion of any settlement in certain specified amounts. Haverhill refused to settle the case, however, unless the Borne plaintiffs publicly admitted that Haverhill did not discriminate against its female members. The Borne plaintiffs made it abundantly clear that they would never agree to do so. The Borne plaintiffs also insisted on a number of non-monetary provisions as a condition of settlement (including substantial changes to Haverhill's bylaws, governance and membership requirements) which were unequivocally rejected by the Club. As a result, the parties never reached agreement on the terms of a mutually-acceptable settlement, the case was tried, and a $1.9 million verdict was returned against the Club.

After entry of the judgment, Federal unconditionally proffered the remaining limits of its primary policy to Haverhill, for use by Haverhill either to negotiate a settlement of the Borne Action or to prosecute an appeal from the trial court judgment.

Haverhill's $2 million excess policy with U.S. Fire (along with the remaining limits of Federal's policy) afforded the Club sufficient resources to pay the Borne judgment in full, but the Club chose to prosecute appeals all the way to the Supreme Judicial Court. Only after all appeals were exhausted did U.S. Fire agree to offer its $2 million policy limits to resolve the case, but by then the amount owed the Borne plaintiffs (with post-judgment interest) exceeded the amount of the Club's remaining insurance coverage.

Haverhill accused U.S. Fire of acting in bad faith by refusing to settle the Borne Action before the amount owed plaintiffs exceeded the Club's insurance coverage. U.S. Fire ultimately settled Haverhill's bad faith claim by paying not only its $2 million policy limits, but also an additional $400,000 in extra-contractual damages.

Even though the Club denied Federal the opportunity to control the Borne Action when it rejected the defense proffered by Federal, and even though Federal repeatedly (and unsuccessfully) encouraged Haverhill to settle the Borne Action and drop its demand for a public "apology" from its female members, and promptly proffered its remaining policy limits to the Club after plaintiffs' verdict, and even though it was Haverhill's <u>excess</u> carrier – U.S. Fire – that refused to tender its limits until the Borne judgment exceeded the Club's remaining insurance coverage, Haverhill claims that Federal – not Haverhill, not U.S. Fire – is responsible for the Club having to pay that portion of the Borne judgment in excess of its insurance coverage. Haverhill's position is utterly without merit, and Federal has filed this declaratory judgment action to obtain a ruling that it has complied with its obligations under its insurance policy.

### STATEMENT OF THE CASE

Federal filed its Complaint on November 7, 2003. Haverhill filed its answer, and counterclaims for breach of contract and violation of G.L. c. 93A on December 16, 2003. Immediately before Federal filed its reply to Haverhill's counterclaims, Haverhill filed an amended answer and added the three new counterclaims which are the subject of Federal's motion to dismiss.

## ARGUMENT

I. **Haverhill's Counterclaim For Punitive Damages Must Be Dismissed Because Haverhill Is Not Entitled To Punitive Damages Under Massachusetts Law**

Haverhill alleges, correctly, that this action is governed by Massachusetts law. Massachusetts law does not permit punitive damages in cases in which an insured alleges that an insurance company has acted in "bad faith." Instead, by statute, Massachusetts limits insurance claimants to double or treble damages if the insured proves that an insurer violated certain statutory standards. Consequently, Haverhill is not entitled to punitive damages in this action as a matter of law, and its "Counterclaim for Punitive Damages" must be dismissed.

A. **Massachusetts Law Governs This Action**

Massachusetts[2] has adopted the "most significant relationship test" from The Restatement (Second) of Conflict of Laws, §188 (1971), which balances "choice-influencing" considerations in determining the appropriate state law to apply to an action sounding in contract in the absence of a contractual choice-of-law clause.[3] Bushkin Ass. v. Raytheon Co., 393 Mass. 622, 631-32 (1985) (applying Massachusetts law to contract action where the parties expected their oral agreement to be enforced and New York's statute of frauds precluded enforcement while Massachusetts' statute of frauds did not).

---

[2] "A federal court sitting in diversity is required to follow the choice of law rules of the state in which it sits." Graham v. Malone Freight Lines, Inc., 948 F. Supp. 1124, 1129 (D. Mass. 1996).

[3] Haverhill's claims against Federal – each of which alleges that Federal acted in bad faith by refusing to settle the underlying litigation – sound in contract. An insurer's duty to act in good faith in settling claims "arises out of the contract." Hyppolite v. City of Boston, 1 Mass. L. Rep. 31, *20-21 (Mass. Super. 1993) (holding that claim for bad faith refusal to settle sounds in contract, not tort), citing Abrams v. Factory Mutual Liability Insurance Co., 298 Mass. 141, 144 (1937) (duty of insurer to defend implies an obligation that the insurer will exercise ordinary care and good faith) and Murach v. Massachusetts Bonding & Insurance Co., 339 Mass. 184, 186-87 (1959) (insurer has reciprocal obligation under policy to negotiate for settlement in good faith).

See also Graham, 948 F. Supp. at 1130 (applying Alabama law to insurance contract action where the contract included a choice-of-law provision, the contract was signed in Alabama, and Massachusetts had "no relationship to the contract"); American Country Ins. Co. v. Bernhard Woodwork, Ltd., 412 Mass. 734, 739 (1992) (applying Illinois law to insurance contract action where both parties were Illinois companies, the contract was negotiated and executed in Illinois, and "the relationship between the parties was centered [in Illinois]").

Specifically, § 188 provides that where, as here, there is no choice-of-law provision in a contract, the parties' rights "are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws, §188(1). This choice-of-law determination involves assessment of (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Bushkin at 632 (citing Restatement (Second) of Conflict of Laws §188(2)). The principles set forth in § 6 of the Restatement, explicitly incorporated into § 188, include, among others, "the relevant policies of the forum." Restatement (Second) of Conflict of Laws § 6.

In examining the circumstances of this matter under the "most significant relationship" test, the factors weigh heavily in favor of applying Massachusetts law. The insured entity bringing these counterclaims "is a Massachusetts corporation with its principal place of business in Haverhill, Massachusetts." Counterclaims, ¶ 1, and the insurer "is an insurance carrier duly licensed to issue contracts of insurance in the

Commonwealth of Massachusetts" and "engages in the conduct or trade of commerce" in Massachusetts. Counterclaim, ¶¶ 2, 20. The insurance policy at issue was negotiated, purchased and delivered to Haverhill in Massachusetts. Counterclaim, ¶ 3. The claim upon which Haverhill bases its counterclaims is the Borne Action, which was a lawsuit filed and prosecuted entirely in Massachusetts. Counterclaim, ¶ 4. The principal allegations of wrongful conduct made by Haverhill – Federal's purported failure to pay defense costs, and Federal's purported failure to settle the Borne Action "occurred primarily and substantially within the Commonwealth of Massachusetts." Counterclaim, ¶¶ 23, 25. All of the damages allegedly sustained by Haverhill – the attorneys' fees incurred to defend the Borne Action (and to prosecute its counterclaims), and the judgment entered in the Borne Action – were incurred or sustained in Massachusetts. Counterclaim, ¶¶ 14, 18, 26, 31 and 38. The place of performance of the insurance contract – the payment of the fees and costs incurred in the Borne Action – was Massachusetts. Indeed, Haverhill itself alleges that its claims are governed by Massachusetts law: it seeks relief under G.L. c. 93A, claiming that Federal's wrongful conduct "occurred primarily and substantially within the Commonwealth of Massachusetts." Counterclaim, ¶ 25. Haverhill further alleges that Federal also violated "Massachusetts law requiring an insurer to pay the cost of defense counsel chosen by the insured." Counterclaim, ¶ 23.

In contrast to all of the foregoing, the only allegation in Haverhill's counterclaim that does not directly tie this matter to Massachusetts is the allegation that Federal's "principal place of business" is in New Jersey. Counterclaim, ¶ 2. Yet it would be

frivolous for Haverhill to argue that this one allegation should lead to the application of New Jersey law over Massachusetts law.[4]

### B. Massachusetts Law Does Not Permit Haverhill To Recover Punitive Damages In This Action

Massachusetts law concerning punitive damages is highly restrictive and well-defined. **The law is clear that punitive damages are not allowed in the Commonwealth of Massachusetts unless expressly authorized by statute.** Flesner v. Technical Communications Corp., 410 Mass. 805, 813 (1991) (denying plaintiff's claim for punitive damages in action alleging wrongful discharge, misrepresentation, invasion of privacy, and violation of Massachusetts Civil Rights Act); Santana v. Registrars of Voters of Worcester, 398 Mass. 862, 867 (1986) (denying plaintiffs' claim for punitive damages in action for deprivation of the right to vote under federal and state law); USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 353 (1984) (reversing judgment as to punitive damages in appeal of trade secret misappropriation judgment).

The only Massachusetts statutes applicable to this action are chapter 176D and chapter 93A, which allows for double or treble damages for unfair or deceptive trade practice by an insurance company. Chapter 93A, § 2 and chapter 176D, § 3 have concurrent application to unfair or deceptive insurance acts or practices, Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass. App. Ct. 723, n.1 (Mass. App. Ct. 1979), and Haverhill's amended counterclaims already include a count under chapter 93A, § 2.

As Haverhill and its counsel well know, Haverhill unquestionably is not entitled to punitive damages under Massachusetts law.

---

[4] Of course, if Haverhill were to argue that the actions of which it complains "occurred primarily and substantially within" New Jersey, then Haverhill's G.L. c. 93A claim would fail as a matter of law. See Counterclaim, ¶ 25.

### C. Haverhill Cannot Circumvent Massachusetts' Proscription Against Punitive Damages By Asserting A Claim Under The New Jersey Punitive Damages Act

Having alleged that all of Federal's wrongful conduct "occurred primarily and substantially within the Commonwealth of Massachusetts" in order to state a claim under G.L. c. 93A (Counterclaim, ¶ 25), Haverhill cannot simultaneously seek punitive damages under the New Jersey Punitive Damages Act, because that Act cannot be employed to regulate or punish conduct that occurs outside of New Jersey. "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction. State Farm Mutual Automobile Ins. Co. v. Campbell, 123 S. Ct. 1513, 1523 (April 7, 2003).

In State Farm, the United States Supreme Court considered whether a $145 million punitive damages award on a $1 million compensatory damages judgment was excessive and in violation of the Due Process Clause. Id. During the underlying trial, the plaintiff-insured alleged that State Farm had acted fraudulently and in bad faith by unreasonably failing to settle a wrongful death and tort action pending against him in Utah state court. Id. at 1518. Over State Farm's objection, the trial court judge admitted extensive expert testimony concerning State Farm's allegedly fraudulent practices in its nation-wide operations. Id. The plaintiff claimed to have introduced this evidence in an effort to show that State Farm's failure to settle the wrongful death action against the plaintiff was a result of a national scheme to meet corporate fiscal goals by limiting payouts on claims company-wide. Id. The Supreme Court found error in the trial court's condemnation, through punitive damages, of State Farm's nationwide practices. See id.

at 1521. The Court decided that, as a general rule, **a State has no legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction.** See id. at 1522.

In support of its decision in Campbell, the Court cited New York Life Ins. Co. v. Head, 234 U.S. 149, 161 (1914) ("[I]t would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State…without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends. This is so obviously the necessary result of the Constitution that it has rarely been called in question and hence authorities directly dealing with it do not abound.") and Huntington v. Attrill, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States."). Id. at 1522.

The Supreme Judicial Court of Massachusetts has also addressed the issue of a State's power to regulate conduct occurring outside its borders. In Isaacson v. Boston Safe Deposit and Trust Co., 325 Mass. 469 (1950), the Court refused to apply a Maine statute regarding apportionment of taxes in an action against the trustee of a trust created in Massachusetts. The decedent, who had created an inter vivos trust while he resided in Massachusetts, later died in Maine where he left a substantial estate. Id. at 469-470. When the federal tax authorities included the trust fund in the decedent's gross estate for purposes of the federal estate tax, the executor filed an action to charge the trustee with a pro rata share of the tax in reliance on Me. Rev. Stat. Ann. Tit. 142, §§ 39-A to 39E, which provided for apportionment of any estate tax paid. Id. Reversing the trial court's

decree in favor of the executor, the Court ruled that the Maine statute had no extraterritorial effect, stating: "It seems to us that to apply the Maine statute in this case would be to give to that statute extraterritorial effect contrary to first principles." Id. at 473, citing Howarth v. Lombard, 175 Mass. 570, 572 (1900) ("It is familiar law that statutes do not extend *ex proprio vigore* beyond the boundaries of the State in which they are enacted. If they are merely penal, they cannot be enforced in another State. If they furnish merely a local remedy for the invasion of a recognized right which is protected elsewhere in other ways, they cannot be given effect in another jurisdiction."). The court reasoned that the Maine statute was inapplicable to the case because the trust was created by the decedent while he was a Massachusetts resident; the original trustee was a national bank located in Massachusetts; the present trustee was a Massachusetts corporation; and the trust indenture was acknowledged and delivered in Massachusetts. Id. at 472. See also Corbin v. Chitwood, 145 F. Supp. 2d 92, 96 (D. Me. 2001) ("A state's statutes, regulations and policies cannot operate outside of its borders and impose duties on other states.")

The cases cited above make evident that the New Jersey Punitive Damages Act has no application to the present case; it only governs wrongs committed within New Jersey's borders. Notably, in its Amended Counterclaim asserted pursuant to M.G.L. c. 93A, Haverhill itself alleges that "Federal's violations of G.L. c. 93A occurred primarily and substantially within the Commonwealth of Massachusetts." Amended Counterclaims, at ¶ 25. Haverhill cannot simultaneously suggest that Federal's alleged violations occurred in Massachusetts and New Jersey. Furthermore, as noted above, the insurance contract at issue in this matter was negotiated and delivered in Massachusetts;

Haverhill's principal place of business and state of incorporation is Massachusetts; Federal tendered payment to Haverhill under the Policy in Massachusetts; and the underlying litigation against Haverhill took place in Massachusetts. Accordingly, the New Jersey Punitive Damages Act has no bearing on this matter, and cannot form the basis for an award of punitive damages here. As a result, Haverhill's "Counterclaim for Punitive Damages" must be dismissed as a matter of law.

## II. This Court Should Dismiss Haverhill's Counterclaims For "Bad Faith Refusal To Settle" And "Breach Of The Duty Of Good Faith And Fair Dealing" Because They Are Duplicative Of The Chapter 93A Claim.

In Massachusetts, an insurance company's obligation to settle claims is governed not by common law, but by the Massachusetts Unfair Claims Settlement Practices Act, Mass. Gen. Laws. ch. 176D, § 3(9)(f), which requires an insurance company to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Mass. Gen. L. c. 176D, § 3(9)(f). See Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass. App. Ct. 723 (Mass. App. Ct. 1979) (prohibition of unfair or deceptive acts or practices includes insurance company's failure to settle claims in which liability has become reasonably clear). Haverhill has filed a counterclaim for Federal's purported violation of G.L. c. 93A, alleging that Federal purportedly failed to reimburse it for defense costs in the Borne Action, and further alleging that Federal failed to "effectuate a fair, prompt and equitable settlement" of the Borne Action. Counterclaim, ¶ 23. Haverhill seeks multiple damages under the Act based upon its claim that Federal's purported violations of the statute were "willful and/or knowing." Counterclaim, ¶ 24.

Federal seeks dismissal of Haverhill's purported "common law" counts making the same allegations, and seeking the same relief, as Haverhill's 93A counterclaim. G.L. c. 93A provides the basis for Haverhill's claims, rather than the common law, and

the common law "good faith/bad faith" counterclaims are based on the same acts, and seek the same relief, as Haverhill's G.L. c. 93A counterclaim. The common law claims fail to state an independent claim cognizable under Massachusetts law, and are duplicative, and thus should be dismissed. In its counterclaim for bad faith refusal to settle, Haverhill essentially alleges that Federal failed to effectuate a prompt, fair and equitable settlement of the claim against Haverhill once liability had become reasonably clear. See Amended Counterclaims, at ¶¶ 5-14. As such, this counterclaim is wholly duplicative of its claim under Chapter 93A, which alleges that Federal violated M.G.L. c. 176D by, among other things, "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." See Amended Counterclaims, at ¶ 23(a)(3). Furthermore, as a general matter, bad faith is taken into account in assessing damages under Chapter 93A. The Massachusetts Appeals Court has noted that, since its enactment in 1967, Chapter 93A

> has maintained a line of distinction between violations that consist of unfair or deceptive acts or practices, simpliciter, and those that are knowing or willful or actuated by *bad faith*. The former are sanctioned by compensatory 'single' damages. Damages for the latter more serious violations are avowedly punitive....

Yeagle v. Aetna Cas. & Sur. Co., 42 Mass. App. Ct. 650, 655 (Mass. App. Ct. 1997) (emphasis added).

Similarly, in support of its counterclaim for breach of the duty of good faith and fair dealing, Haverhill alleges only that Federal failed to exercise good faith *by failing to settle the claims against Haverhill* in the underlying litigation. See Amended Counterclaims, at ¶¶ 28-31. In other words, according to this counterclaim, Federal's failure to settle the claim constitutes bad faith. Because this entire counterclaim is founded solely on the allegation that Federal acted in bad faith in failing to settle the

claim, it too should be dismissed as duplicative of Haverhill's claim under Chapter 93A, which, as noted above, alleges the very same thing.

This Court regularly dismisses duplicative counts. See, e.g., Boston International Music, Inc. v. Austin, 2003 U.S. Dist. LEXIS 16240, *4 (D. Mass. 2003) (dismissing count for false designation of origin as duplicative because "plaintiffs' claims are sufficiently covered by the law of copyright"); Petricca v. City of Gardner, 194 F. Supp. 2d 1, 5 (D. Mass. 2002) (dismissing claim for misfeasance as duplicative of negligence claim where claim for misfeasance was "essentially a claim for negligence"); Chapman v. Bernard's Inc., 167 F. Supp. 2d 406, 414 (D. Mass. 2001) (dismissing breach of warranty count "[t]o the extent [it] allege[d] breach of the implied warranty of merchantability," which was alleged in more detail in a separate count). Massachusetts state courts also regularly dismiss duplicative counts. See, e.g., Fidelity Management & Research Co. v. Ostrander, 1 Mass. L. Rep. 397, n.2 (Mass. Super. 1993) ("Counts I, II and III all seek the same relief based on different theories grounded mainly on the same underlying facts. Since the court will grant summary judgment as to Count I there is no need to reach the other two counts which will be dismissed as duplicative of Count I."); Burrage v. Mintz, 4 Mass. L. Rep. 238, *30 (Mass. Super. 1995) (dismissing two duplicative counts). As such, this Court should dismiss Haverhill's counterclaims for bad faith refusal to settle and breach of the duty of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, Federal respectfully requests that the Court dismiss, with prejudice, Haverhill's "Counterclaim for Bad Faith Refusal to Settle," "Counterclaim for Breach of the Duty of Good Faith and Fair Dealing," and "Counterclaim for Punitive Damages."

Respectfully submitted,

MELICK, PORTER & SHEA, L.L.P.

_____
Robert P. Powers (BBO No. 544691)
28 State Street
Boston, MA 02109
(617) 523-6200 (telephone)
(617) 523-8130 (facsimile)

Attorneys for Plaintiff/Counterclaim
Defendant Federal Insurance Company

**OF COUNSEL:**

ROSS, DIXON & BELL, L.L.P.
Wallace A. Christensen
Pamela L. Signorello
2001 K Street, N.W.
Washington, D.C. 20006-1040
(202) 662-2000 (telephone)
(202) 662-2190 (facsimile)

Dated: February 6, 2004

I hereby certify that I have made service of the foregoing document in accordance with the provisions of Fed. R. Civ. P. 5.